IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **ANITA KUNZMAN,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> *v.* <br><br> **1ST ORLANDO REAL ESTATE SERVICES, INC.,** d/b/a Premium Properties Real Estate Services, a Florida corporation, <br><br> *Defendant.* | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

This case addresses a disturbing trend whereby real estate brokerages direct their real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA") to generate business for the brokerages. Plaintiff Anita Kunzman ("Plaintiff Kunzman" or "Kunzman") brings this Class Action Complaint and Demand for Jury Trial against Defendant 1st Orlando Real Estate Services, Inc., d/b/a Premium Properties Real Estate Services ("Defendant" or "Premium Properties") to stop the Defendant from violating the TCPA  by training its agents to place calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Kunzman, for this Complaint, alleges as follows

1

upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.      Plaintiff Kunzman is a resident of New Port Richey, Florida.

2.      Defendant Premium Properties is a corporation registered in Florida, with its headquarters located in Orlando, Florida. Defendant Premium Properties conducts business throughout Florida.

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.      This Court has personal jurisdiction and venue is proper since the Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from the Defendant into this District where the Plaintiff resides.

## INTRODUCTION

5.      As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints

about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.      According to online robocall tracking service "YouMail," 5.0 billion robocalls were placed in April 2025 alone, at a rate of 165.0 million per day. www.robocallindex.com (last visited April 6, 2025).

10.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13.     1st Orlando Real Estate Services, Inc. operates using the d/b/a Premium Properties Real Estate Services:

**LICENSEE DETAILS**                                              4:43:53 PM 5/26/2025

Licensee Information

| | |
|---|---|
| Name: | **1ST ORLANDO REAL ESTATE SERVICES INC** (Primary Name) |
| | **PREMIUM PROPERTIES REAL ESTATE SERVICES** (DBA Name) |
| Main Address: | **564 NORTH SEMORAN BOULEVARD** |
| | **ORLANDO  Florida  32807** |
| County: | **ORANGE** |
| License Location: | **564 N SEMORAN BLVD** |
| | **ORLANDO  FL  32807** |
| County: | **ORANGE** |

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.myfloridalicense.com/LicenseDetail.asp?SID=&id=07B5850B25E369FC7CBAC984AC15B3B1

14.     Defendant Premium Properties is a real estate brokerage with over 300 real estate agents working out of at least 7 offices located throughout Florida.[4]

15.     Premium   Properties   provides   offices,   support,   technology, marketing/branding support, and training to its agents.[5]

16.     Premium Properties also provides leads for its agents.[6]

17.     Premium Properties generates revenue by receiving a percentage from each real estate transaction of its agents.[7]

18.     Premium Properties has a vested interest in the success of its real estate agents, as those agents generate revenue for the corporation.

## PREMIUM PROPERTIES DIRECTS ITS REAL ESTATE AGENTS TO ENGAGE IN COLD CALLING TO GENERATE BUSINESS THROUGH ITS TRAINING

19.     Premium Properties provides corporate branded training to all its real estate agents.

20.     Premium Properties trains its real estate agents to generate business by placing cold calls to consumers without regard for whether their telephone numbers are listed on the National Do Not Call Registry.

---

[4] https://orlandorealestatejobs.com/about-us/
[5] https://orlandorealestatejobs.com/elevate-your-real-estate-career-with-premium-properties-in-2024/
[6] Id.
[7] Id.

21.    On its corporate site that is intended to recruit real estate agents, Premium Properties explicitly advertises that it hosts regular cold calling nights:



22.    Premium Properties promotes its cold calling nights on its social media pages and on its YouTube channel:



---

[8] https://orlandorealestatejobs.com/
[9] https://www.youtube.com/watch?v=LDYHzGtnMGE

6



23.    Premium Properties directs its real estate agents to engage in cold calling to generate business, and it references cold calling in a lot of its online training including.

24.    On the Premium Properties Training YouTube channel,[11] a video discussing lead generation was posted entitled – More Engagements, More Leads w/Marketing.[12]

---

[10] https://www.facebook.com/profile/100060832851667/search/?q=cold%20call
[11] https://www.youtube.com/@premiumpropertiestraining2825/playlists
[12] https://www.youtube.com/watch?v=AUqSw7-SF5s

25.    The speaker in Defendant's video teaches the importance of agent exposure. She states, "they need to be exposed to you and your content. A lot of ***it is all a numbers game***. This is the same as in sales, in general. As you guys know, it's a numbers game. You know, like reaching out. ***Maybe if you cold called 200 people***, out of that 200 maybe 50 of them will be interested and maybe from there you end up closing three or four of those people. It's all a numbers game because if you called 50 people, let's stay, instead of 200 maybe you won't close any of those, but ***you'd have to call more people in order to increase your chances of pushing them through the sales funnel***…"[13] (emphasis added)

26.    Later in the video, the speaker discusses the goal of getting 2 listing appointments each month. To do this, the real estate agent will engage in cold calling by calling consumers with for sale by owner listings ("FSBO") to generate business, among other things, as this screenshot from the video illustrates:

---

[13] Id. – 16 minutes, 10 seconds



27.    Also included in the Premium Properties Training Youtube channel is a video entitled – Cold Calling for Listings[15] that is taught by Tom Bisienere, a Premium Properties real estate agent,[16] and Beth Hathaway, a Premium Properties real estate agent and residential manager.[17]

28.    Bisienere starts off the video with, "Tom Bisienere here, Premium Properties Lake Mary Office. Today we're going to talk about cold calling expired listings. The one reason I like the expired listings to me they are the low hanging fruit. The people have already been on the market. They've already agreed to pay a

---

[14] Id. – 41 minutes, 17 seconds
[15] https://www.youtube.com/watch?v=xfMZMPnmMhc
[16] https://www.linkedin.com/in/tom-bisienere-ba70b25
[17] https://www.linkedin.com/in/beth-hathaway-36baa315/

commission. Uh, obviously something went wrong. Something went awry or they would have sold the house by now. So my approach will be find out what the problem was and offer a solution to that problem."[18]

29.    Bisienere and Hathaway spend the rest of the video first going through a cold call to a consumer with an expired listing scenario which details how to get a listing with the consumer, and then a cold call to a consumer with a FSBO listing in which the property owner agrees to meet with an agent.

30.    Premium Properties directs its real estate agents to pursue FSBO consumers through cold calls.

31.    The LinkedIn profile for Tony Legakis, vice president of business development and director of Premium Partners at Premium Properties reveals that the Defendant teaches its real estate agents to pursue FSBO's and consumers with expired property listings:

---

[18] https://www.youtube.com/watch?v=xfMZMPnmMhc



**Tony Legakis** · 2nd
VICE PRESIDENT OF BUSINESS DEVELOPMENT & DIRECTOR OF "PREMIUM PARTNERS" At PREMIUM PROPERTIES
Orlando, Florida, United States · Contact info
500+ connections

PREMIUM PROPERTIES
REAL ESTATE SERVICES

FLORIDA STATE

Connect    Message    More

### About

I believe real estate agents should be customer service oriented. An agent should communicate with their customers the first of every week whether the news is good, bad or indifferent. We should answer our phones make sure that the lender, the title company and the other agent is doing there jobs. The only way these things can happen is by having a full service office with a full staff of experienced people who understand their jobs. When you have this kind of office your house is advertised and showcased on all the top real estate websites. The post cards and flyers are done by a graphic designer and sent out. Your listing is put in the company magazine that is sent to our customers, publix,walmarts and local businesses. We teach our agents to blog,, work social media,, get referrals, work FSBO, Expired Listing and engage with their farm area. I am hoping as an agent in their first 18 months that they build a base of people to start getting referrals. Its easy to get referral when you have a staff that is helping your agents which makes real estate and helping their customers easier. Customer Service has to be way above aboard. Answering your phone has to happen all the time. Helping our agents a must..

32.     In fact, Premium Properties gave free access to Landvoice to its real estate agents, as per a video posted on its Premium Properties Training Youtube channel – "Agent Resources":[19]

33.     Importantly, Landvoice provides leads that include telephone numbers on the National Do Not Call Registry without getting consumers' consent to sell their information or for agents to call them.

---

[19] https://www.youtube.com/watch?v=7MlY2qxC25M

11

34.     In the video that is presented by Julian Montoya, a former marketing coordinator for Premium Properties,[20] Montoya states, "We also have Landvoice. It's a really cool tool you can use to **contact expired listings, for sale by owner's, or people that you otherwise wouldn't be able to reach**. This is a nice tool that we have for you to actually **make those calls** and possibly land a listing appointment…"[21](emphasis added)

35.     Landvoice's leads are aggregated from expired listings from the MLS. Landvoice uses state-of-the-art technology to "take additional steps to deliver the highest quality and quantity of owner contact information including cell phone numbers" associated with those expired listings.[22]  Landvoice generates multiple phone numbers (including cell phone numbers and other numbers listed on the DNC) for most leads to ensure that the agent calling has the best chance of reaching the individual associated with the expired listing.[23]

36.     On March 4, 2022, John Huebner, the CEO of Premium Properties posted a video on his personal YouTube channel announcing a new customer relationship management (CRM) system that would be provided at no cost to all

---

[20] https://www.linkedin.com/in/julian-montoya-02501b143/
[21] Id. – 10 minutes, 6 seconds
[22] https://www.linkedin.com/company/landvoice/
[23] Landvoice is owned by Domega, Inc., "the world leader of data aggregation and lead generation [which uses] hi-tech creative systems to give clients hard-to-get data and leads."  *See* https://www.linkedin.com/company/domega-inc-/

Premium Properties real estate agents entitled – Orlando Real Estate Broker / Owner: New Seller Leads Program and CRM and New Davenport Location![24]

37.    In the video, Huebner states, "We're going to be switching over to Chime, and Chime is going to be a great way that we're going to be able to bring in some new leads into our system, and if you've never heard of Chime before, definitely Google it. Check it out and I think what you're going to find is it's one of the most up-to-date active ways that agents can bring leads into themselves…"[25]

38.    Chime CRM was designed for real estate agents. It features a power dialer[26] and three-line dialer that allows agents to dial up to 3 leads simultaneously.[27]

39.    Chime CRM also features a skip-tracing tool that allows agents to source consumer names and phone numbers.[28]

40.    Chime CRM also includes direct compatibility with Landvoice.[29]

41.    Chime CRM also includes SMS/text message marketing campaigns so real estate agents can send text messages to consumers:

---

[24] https://www.youtube.com/watch?v=Em3eH47xBRE
[25] Id. – 56 seconds
[26] https://therealestatetrainer.com/chime-a-real-estate-lead-generation-ai-machine
[27] https://lofty.com/blog/chime-triple-line-dialer
[28] https://thelazyagent.com/10-secret-chime-crm-features-you-need-to-know-about/
[29] https://www.brokerteq.com/landvoice-expiredlisting

# Real Estate CRM Features: How to Call and SMS on Chime

Nurturing your leads and managing your pipeline is a critical aspect of your business, but did you know that some real estate CRMs like Chime offer unique tools and features to power your lead nurturing campaigns?

Today on our Feature Showcase, we'll learn how to call and run SMS marketing campaigns from Chime. Last week we learned how to add lenders and team members in Chime, and this week we'll learn how to use your Virtual Number to stay in touch with prospective leads and past clients.

Chime is built mobile-first, so the "desktop" version of Chime is mobile-responsive and will adapt to any sized device when accessing Chime from a browser. If you prefer a mobile app while on the go, we also built a Chime app, too! You can place calls and texts using a Virtual Number from the mobile-responsive version of Chime and the mobile app! [30]

42. Chime CRM can send text messages to consumers using Chime that will display the agent's cell phone number:



[31]

---

[30] https://lofty.com/blog/real-estate-crm-features-how-to-call-and-sms-on-chime
[31] https://www.youtube.com/watch?v=QAR8ZO2TS8s – 8 minutes, 20 seconds

43.     In summary, Premium Properties trains its real estate agents and directs them to engage in cold calling using an automated dialer and leads who have not consented to be called and whose telephone numbers are on the National Do Not Call Registry, which includes the direction to pursue consumers with FSBO listings, like Plaintiff Kunzman.

44.     Premium Properties profits from the real estate transactions generated by its agents, and therefore from the illegal telemarketing conduct it trains its agents to engage in to generate business.

45.     It was this unlawful telemarketing conduct that led to the unsolicited text messages that Plaintiff Kunzman received.

## PLAINTIFF KUNZMAN'S ALLEGATIONS

46.     Plaintiff Kunzman is the subscriber and sole user of the cell phone number ending with 1660.

47.     Plaintiff Kunzman registered her cell phone number on the DNC on November 18, 2004.

48.     Plaintiff Kunzman uses her cell phone number for personal use only as one would use a landline telephone number in a home for such things as speaking to family and friends.

49.     Plaintiff Kunzman's cell phone number is not associated with a business and is not used for business-related purposes.

50.    Plaintiff Kunzman is retired.

51.    Plaintiff Kunzman pays for the use of her cell phone personally. It is not reimbursed by a business.

52.    Plaintiff Kunzman resides in Florida and her cell phone number has a 727 Florida area code.

53.    On December 17, 2024, Plaintiff in an effort to help her elderly mother-in-law, helped her list her mother-in-law's property for sale on Zillow as a FSBO listing and listed her own phone number for buyers to call so she could speak to them on behalf of her mother-in-law.

54.    Plaintiff Kunzman intentionally listed the property as a FSBO since neither she nor her mother-in-law had any intention of working with a real estate agent. She did not consult with a real estate agent prior to listing the property for sale.

55.    As soon as the property was listed on Zillow, Plaintiff Kunzman began receiving unsolicited calls and text messages from real estate agents who wanted Plaintiff to list their property with them.

56.    Plaintiff Kunzman received an unsolicited text message to her cell phone on March 14, 2025 at 5:45 AM, which was several months after she listed her property for sale as a FSBO listing:



57.    The text message shown above was sent by Tiantian Yue, a Premium

Properties real estate agent:





---

[32] https://www.facebook.com/profile.php?id=100092682125518

58.     The text message is a solicitation, as it offers Yue's services to help sell the FSBO property, which is done at a cost to the consumer.

59.     The text message was received by Plaintiff at 5:45 AM, in violation of the TCPA that prohibits solicitation calls and text message to a residential number before 8:00 AM.

60.     Based off of Yue stating that she was "with Premium Properties", Plaintiff understood that Yue was authorized by Premium Properties to contact her on its behalf.

61.     On March 28, 2025 at 6:18 PM, Plaintiff Kunzman received a 2nd unsolicited text message from 407-516-4080 to her cell phone number:



Friday 6:18 PM

Hi there,

How are things going with the "for sale by owner" listing? Have you sold your property yet? Are you open to working with an agent to expedite the process?

62.     As with the first text message, this message is a solicitation from Yue who is soliciting her services as a Premium Properties real estate agent.

63.     Plaintiff Kunzman has never provided her cell phone number to Premium Properties or any of its real estate agents.

64.     The unauthorized solicitation text messages that Plaintiff Kunzman received from or on behalf of Defendant Premium Properties have harmed Plaintiff

in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

65.    Seeking redress for these injuries, Plaintiff Kunzman, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

66.    Plaintiff Kunzman brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **<u>Do Not Call Registry Class:</u>** All persons in the United States who from four years prior to the filing of this action through class certification (1) an Premium Properties affiliated agent called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called/texted Plaintiff.

67.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated

and/or released. Plaintiff Kunzman anticipates the need to amend the Class definitions following appropriate discovery.

68. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

69. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)    Whether Defendant's conduct violated the TCPA;

(b)    whether Defendant or its agents placed unsolicited calls and/or text messages to Plaintiff and members of the Do Not Call Registry Class without first obtaining consent to make the calls/texts;

(c)    whether Defendant placed multiple calls/text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(d)    whether the calls/texts constitute a violation of the TCPA:

(e)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

70.    **Adequate Representation**: Plaintiff Kunzman will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Kunzman has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Kunzman and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Kunzman nor her counsel have any interest adverse to the Class.

71.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Kunzman. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation

necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## <u>FIRST CLAIM FOR RELIEF</u>
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Kunzman and the Do Not Call Registry Class)

72.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

73.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

74.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

75.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to

be initiated, telephone solicitations to telephone subscribers such as Plaintiff Kunzman and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

76.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Kunzman and the Do Not Call Registry Class received more than one telephone call/text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

77.    As a result of Defendant's conduct as alleged herein, Plaintiff Kunzman and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

78.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

23

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b)  An award of money damages and costs;

c)  An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)  An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e)  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Kunzman requests a jury trial.

Respectfully Submitted,

**ANITA KUNZMAN**, individually and on behalf of all others similarly situated,

DATED this 14th day of December, 2025.

By: /s/ *Stefan Coleman*

Stefan Coleman
COLEMAN PLLC

18117 Biscayne Blvd
Suite 4152
Miami, FL 33160
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*\*Lead Counsel for Plaintiff and the putative Class*